IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JIMMIE DALE HENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. A. NO. 26-74-KD-MU |
| | ) | |
| JACOB BRIDGES, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action is before the Court on the Motion to Dismiss and brief in support filed by Defendant Jacob Bridges (Docs. 10, 11), Plaintiff's response (Doc. 15), and Defendant's Reply (Doc. 16). The motion to dismiss has been referred to the undersigned for pretrial disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72. For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED**.

## I. PLAINTIFF'S CLAIMS AND ALLEGATIONS

Plaintiff Henson filed an amended complaint against Baldwin County Sheriff's Deputy Jacob Bridges on March 12, 2026. (Doc. 5). Plaintiff asserts two claims under 42 U.S.C. § 1983 based on his allegedly wrongful arrest by Deputy Bridges: Count I – Wrongful Arrest/False Arrest under the Fourth and Fourteenth Amendments and Count II – First Amendment Retaliation. (Doc. 5, PageID.26-28). Plaintiff's claim for false arrest is based upon allegations that Bridges placed Plaintiff under arrest without probable cause to believe that he had violated Alabama Code § 13A–13–6 – Endangering welfare of

child.[1] (Doc. 5, ¶¶ 42–51). Plaintiff's claim for First Amendment retaliation is based on allegations that Bridges arrested Plaintiff for an improper motive. (Doc. 5 at ¶¶ 52–61).

Plaintiff, a citizen of Baldwin County, Alabama, alleges that on March 13, 2025, he was driving his granddaughter home at night and, as they entered his neighborhood, he allowed his granddaughter to climb through the sunroof and "lie on top of the vehicle so she could look at the stars" (the "Incident"). (Doc. 5 at ¶¶ 3, 9). Plaintiff states he "drove extremely slowly and safely until he entered his driveway" and that his "granddaughter was on top of the vehicle for approximately one minute." (Doc. 5 at ¶¶ 10-11). On or about March 14, 2025, the Incident was reported by a neighbor to Defendant Bridges. (Doc. 5 at ¶ 12). On March 17, 2025, Defendant came to Plaintiff's house to discuss the Incident and was confrontational, but Plaintiff was not arrested. (Doc. 5 at ¶¶ 13-14). The same day, Plaintiff reported Defendant's conduct to Baldwin County Sheriff Anthony Lowery. (Doc. 5 at ¶ 15).

On March 18, 2025, Defendant sent a text message to Plaintiff's daughter stating:

> Good morning Sarah, this is Deputy Bridges who spoke with you and your father yesterday. I am doing a documentation report of the incident with your daughter riding on the top of the car. Can I get her full name and date of birth please. Thank you.

---

[1] Alabama Code § 13A-13-6 states:

(a) A man or woman commits the crime of endangering the welfare of a child when:

> (1) He or she knowingly directs or authorizes a child less than 16 years of age to engage in an occupation involving a substantial risk of danger to his life or health; or
>
> (2) He or she, as a parent, guardian or other person legally charged with the care or custody of a child less than 18 years of age, fails to exercise reasonable diligence in the control of such child to prevent him or her from becoming a "dependent child" or a "delinquent child," as defined in Section 12-15-1.

(Doc. 5 at ¶ 16). Plaintiff's daughter responded to Defendant that day stating:

> Until Sheriff Lowery responds regarding this incident, I prefer not to comment further. We value a positive relationship with your department as we move forward, and I hope you understand.

(Doc. 5 at ¶ 16). Plaintiff alleges his daughter's response made Defendant aware of his report to Sheriff Lowery regarding Defendant's behavior after the Incident. (*Id.*).

On March 24, 2025, caseworkers with the Baldwin County Department of Human Resources ("DHR") came to Plaintiff's home, and a caseworker demanded to speak to all adults and the minor child. (Doc. 5 at ¶ 21). Plaintiff agreed that the caseworker could speak to the adults but not to the minor child alone. (*Id.*). The caseworker spoke to Defendant via cellphone, who, unbeknownst to Plaintiff, was outside his home with two other Baldwin County Sheriff's deputies. (Doc. 5 at ¶ 22).

At 2:28 p.m., Defendant asked Plaintiff to step outside, and he complied. (Doc. 5 at ¶ 23). At 2:30 p.m., Defendant instructed Plaintiff to remove his hand from his pocket and placed Plaintiff under arrest. (Doc. 5 at ¶ 24). When Plaintiff's spouse asked the reason for the arrest, Defendant "explained that he felt compelled to act because of how Plaintiff had spoken to DHR and not taking the matter seriously." (Doc. 5 at ¶ 25). Around 2:39 p.m., Defendant began transporting Plaintiff to Foley City Jail. (Doc. 5 at ¶ 26). On March 25, 2025, Plaintiff was transported to Baldwin County Jail, where he remained until he bonded out after 2:00 p.m. (Doc. 5 at ¶ 30). During this time, Plaintiff was unable to fulfill his role as full-time caretaker for his medically complex daughter, who required many medications administered at carefully scheduled intervals. (Doc. 5, PageID.21-23).

Defendant signed and filed a Complaint with the District Court of Baldwin County alleging that Plaintiff violated Alabama Code § 13A-13-6 because he was "a parent,

guardian or other person legally charged with the care or custody" of the minor child and failed "to exercise reasonable diligence in the control of [the minor child] so as to prevent her from becoming a 'dependent child' or a 'delinquent child'" due to Plaintiff "driving on a public roadway with a young child on the roof of his car, placing the child at substantial risk of danger to her life or health." (Doc. 5 at ¶ 31-32). Plaintiff states he was never a "parent, legal guardian, or legal custodian" of the minor child as defined by applicable law. (Doc. 5 at ¶ 39). The charges against Plaintiff were dropped on November 26, 2025. (Doc. 5 at ¶ 40). As a result of his one day of incarceration, Plaintiff states he suffered emotional distress, humiliation, embarrassment, disruption of family life, and was forced to incur legal expenses. (Doc. 5 at ¶ 41).

## II. STANDARD OF REVIEW

Defendant submits that this action is due to be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has failed to state any claims upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. A complaint is also "subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim,'" *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003)),

or "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

To determine whether a claim is stated, the court "must accept the factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff." *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1066 (11th Cir. 2017). "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). While the court must usually limit its review and consideration on motion to dismiss to the complaint itself and exhibits attached thereto, a "court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010).

## III. CONCLUSIONS OF LAW

Defendant Bridges asserts that he is entitled to qualified immunity for both claims brought by Plaintiff stemming from his arrest because Plaintiff has failed to plausibly allege a violation of his clearly established First, Fourth, and Fourteenth Amendment rights. (Doc. 11). Qualified immunity is applicable unless a government official's conduct violated a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To determine the application of qualified immunity, a court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Id*. A right is clearly established when it is "sufficiently

clear that every reasonable official would have understood that what he is doing violates that right." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1273 (11th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Qualified immunity "is designed to protect 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Rhodes v. Robbins*, No. 21-11436, 2022 WL 1311558, at *2 (11th Cir. May 2, 2022) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

"Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee*, 284 F. 3d 1194 (internal quotation omitted). The court is permitted to exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the case at hand. *Pearson*, 555 U.S. at 236.

**A. Whether Defendant Bridges was acting within the scope of his discretionary authority**

When asserting qualified immunity, a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016). "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Put another way, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v.*

*Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). “In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.” *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quoting *Holloman*, 370 F.3d at 1266).

Here, Plaintiff’s claims for false arrest and First Amendment retaliation both arise from his allegedly wrongful arrest by Defendant. Applying the Eleventh Circuit’s test from *Holloman*, the proper inquiry is whether arresting and detaining criminals is within the power of an Alabama deputy sheriff. It undoubtedly is, as set forth in Ala. Code § 36–22–3(a)(4), and Plaintiff does not challenge this contention. Defendant acted within his authority and, as a result, the burden shifts to Plaintiff to demonstrate a violation of a clearly established constitutional right. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

### B. Whether Count I plausibly alleges a claim for wrongful arrest/false arrest[2]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall

[2] In his reply brief (Doc. 16), Defendant mentions for the first time that the arrest was made pursuant to a warrant signed by a Baldwin Count District judge on March 24, 2025, which found probable cause on the Complaint and charged the offense of Child-Endangering Welfare – 13A-013-006. Defendant attached the warrant and Complaint as exhibits to his reply. (Doc. 16-1). Defendant argues that where an individual has been arrested pursuant to a warrant, the arrest is in accordance with legal process and, therefore, the appropriate claim is for malicious prosecution and not false arrest. (Doc. 16, PageID.90-91). While this may be correct, “[d]istrict courts, including this one, ordinarily do not consider arguments raised for the first time on reply.” *Clarke v. Tannin, Inc.*, 301 F. Supp. 3d 1150, 1173 (S.D. Ala. 2018). Defendant has not explained why this information and argument was not presented in his initial motion. Therefore, in evaluating the claim for false arrest, the Court will consider only the arguments presented in the initial motion and the facts alleged in the amended complaint – neither of which mention the warrant.

not be violated…" U.S. Const. amend. IV. "To succeed on a false-arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). An officer has probable cause "where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Maryland v. Pringle*, 540 U.S. 366, 372 n. 2 (2003) (alterations in original). Additionally, an officer has probable cause if "a reasonable officer could conclude ... that there was a substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (alterations in original) (quoting *D.C. v. Wesby*, 583 U.S. 48, 62 (2018). As explained by the Eleventh Circuit, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 245 n. 13)).

"Although 'an arrest made without probable cause violates the Fourth Amendment,' an officer is entitled to qualified immunity if he has 'arguable probable cause.'" *Richmond v. Badia*, 47 F.4th 1172, 1181 (11th Cir. 2022) (quoting *Redd v. City of Enterprise,* 140 F.3d 1378, 1382 (11th Cir. 1998)). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Id*. (internal quotations omitted). The standard for arguable probable cause is objective and does not consider the officer's subjective intent or beliefs. *Brown v. City of Huntsville, Ala*., 608 F.3d 724, 735 (11th Cir. 2010). Under the arguable probable cause standard, it is the plaintiff's burden to "demonstrate that no reasonable officer could have

found probable cause under the totality of the circumstances." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007) (emphasis in original).

"Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001). The issue is whether the officer "violated clearly established law in making the arrests based on the objective factors that gave rise to his probable-cause determination and not whether the arrestees' actions actually constituted a crime." *Id*. at n. 8. Nonetheless, the Court may look to "the elements of the alleged crime and the operative fact pattern." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137–38 (11th Cir. 2007) (citation omitted).

**i. Endangering the welfare of a child**

The amended complaint states that Defendant signed a Complaint alleging that Plaintiff violated Alabama Code § 13A-13-6 because he was "a parent, guardian or other person legally charged with the care or custody" of the minor child and failed "to exercise reasonable diligence in the control of [the minor child] so as to prevent her from becoming a 'dependent child' or a 'delinquent child'" due to Plaintiff "driving on a public roadway with a young child on the roof of his car, placing the child at substantial risk of danger to her life or health." (Doc. 5 at ¶¶ 31-32). Presumably then, this is the offense for which Defendant believed he had probable cause to arrest Plaintiff. Accordingly, Plaintiff asserts

in Count I that Defendant wrongfully arrested Plaintiff because no reasonable officer could have concluded that Plaintiff's conduct surrounding the Incident satisfied the statutory elements of § 13A-13-6. (Doc. 5 at ¶ 50).

Specifically, Plaintiff asserts that, at the time of his arrest, no reasonable officer could believe that allowing a child to briefly lie on the roof of a vehicle traveling extremely slowly within a residential neighborhood for approximately one minute constituted directing or authorizing the child to engage in an "occupation" involving a substantial risk of danger within the meaning of § 13A-13-6(a)(1). (Doc. 5 at ¶ 46). Additionally, Plaintiff alleges that, at the time of his arrest, Defendant knew or reasonably should have known that Plaintiff was not the parent, legal guardian, or legal custodian of the minor child and that the minor child had not been adjudicated delinquent or dependent, nor was there any pending juvenile proceeding suggesting that the child was at risk of becoming delinquent or dependent within the meaning of Alabama law. (Doc. 5 at ¶¶ 48-49).

The Court agrees with Plaintiff that the alleged facts do not fall within the meaning of directing or authorizing a child to engage in an "occupation" involving a substantial risk of danger as described in § 13A-13-6(a)(1), and Defendant does not appear to argue that the facts would fall within subsection (a)(1). Instead, the parties dispute the meaning of subsection (a)(2) and whether the facts fall within its parameters. The Court finds that the facts as alleged could support a finding of arguable probable cause under § 13A-13-6(a)(2).

As noted above, under § 13A-13-6(a)(2), a person commits the crime of endangering the welfare of a child when he "as a parent, guardian or other person legally charged with the care or custody of a child less than 18 years of age, fails to exercise

reasonable diligence in the control of such child to prevent him or her from becoming a ‘dependent child’ or a ‘delinquent child,’ as defined in Section 12-15-1.” Relevant here, a “dependent child” is one in need of care or supervision and whose parent, guardian, or other custodian “subjects the child or any other child in the household to abuse, as defined in Section 12–15–301 or neglect as defined in Section 12-15-301, or allows the child to be so subjected.” Ala. Code § 12-15-102(8). “Neglect” in this instance is statutorily defined as “[n]egligent treatment or maltreatment of a child, including, but not limited to, the failure to provide adequate food, medical treatment, supervision, education, clothing, or shelter.” Ala. Code § 12-15-301(9).

Plaintiff argues that Defendant lacked arguable probable cause for arresting him under § 13A-13-6(a)(2) because Defendant could not have reasonably concluded under the facts alleged that he was a "parent, guardian, or other custodian" of his granddaughter. However, even without performing the *in loco parentis* analysis presented by Defendant, the Court finds that Plaintiff has not met his burden to show that no reasonable officer could have concluded that Plaintiff was at least a custodian of his granddaughter. *See Curry v. Hanks*, No. CV 13-00517-CG-B, 2016 WL 777796, at *4 (S.D. Ala. Feb. 2, 2016) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir.2004)), *report and recommendation adopted*, 2016 WL 814940 (S.D. Ala. Feb. 29, 2016) ("Under the arguable probable cause standard, it is the plaintiff's burden to 'demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances.'”). Per the amended complaint, Defendant was aware that Plaintiff’s granddaughter resided with Plaintiff and that Plaintiff was a caretaker for her mother, Plaintiff’s daughter. (Doc. 5). Defendant was also aware that when DHR

caseworkers arrived at Plaintiff's home, Plaintiff denied the caseworkers the opportunity to speak to his granddaughter—an act that demonstrates assumption of legal authority over the child. (Doc. 5, ¶¶ 20-21.) A reasonable officer could conclude under these facts that Plaintiff was a custodian of his granddaughter.

Further, Defendant reasonably concluded that Plaintiff’s actions put his granddaughter at risk of being declared a “dependent child” under Alabama law. As Defendant notes, and contrary to Plaintiff's allegations, a plain reading of § 13A-13-6(a)(2) contains no requirement that the child has been adjudicated dependent or that there is any pending proceeding to that effect. (Doc. 11, PageID.54-56; Doc. 5, ¶49). Plaintiff also argues that his granddaughter cannot be considered a "dependent child" because the amended complaint contains no facts showing a present inability of Plaintiff to supervise or protect his granddaughter, and the Incident was an isolated, completed occurrence rather than an ongoing threat to his granddaughter. (Doc. 15, PageID.83). However, the complaint alleges one of the reasons Defendant gave for arresting Plaintiff was that he "was not taking the matter seriously." (Doc. 5, ¶25). Therefore, the facts as alleged reveal that Defendant could reasonably have believed Plaintiff may repeat the dangerous conduct.

The Alabama Code broadly defines “neglect” to encompass all “negligent treatment” of a child. Ala. Code § 12–15–301(9). For such neglect, a child may be declared dependent by an Alabama court. Ala. Code § 12–15–102(8)(1). Here, the Court agrees with Defendant that allowing a child to ride on the roof of a vehicle is clearly dangerous and constitutes negligence. Courts have observed that riding on the roof of a vehicle or “car surfing,” as it is sometimes described, is an inherently dangerous activity.

*See, e.g., Ohl v. CSX Transportation, Inc*., 625 F. Supp. 3d 1319, 1337 (N.D. Ga. 2022), *aff'd*, No. 22-13298, 2023 WL 4174411 (11th Cir. June 26, 2023); *see also Lighthouse Neurological Rehab. Ctr., Inc. v. Allstate Ins. Co.*, No. 10-10154-BC, 2012 WL 750068, at *11 (E.D. Mich. Mar. 7, 2012) ("Climbing onto a moving vehicle is an inherently dangerous activity that carries a foreseeable risk of injury."). Regardless of the speed of the vehicle or the length of time engaged in this activity, the serious dangers of allowing a child to ride unrestrained and alone on the roof of a vehicle are self-evident. The child could fall and suffer severe head injuries, impact trauma, broken bones, or even death from hitting the ground or being run over by the vehicle or another vehicle on the road. As a result, Defendant, who reasonably believed Plaintiff to be a custodian of his granddaughter, reasonably found that Plaintiff failed to "exercise reasonable diligence" to prevent her from becoming a "dependent child" when he allowed her to ride on the roof of his vehicle. Thus, Defendant had at least arguable probable cause to arrest Plaintiff pursuant to § 13A–13–6(a)(2).

**ii. Reckless endangerment**

It is well-settled that the "any crime rule … insulates officers from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (emphasis in original) (*citing Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002)). "Applying the 'any-crime rule' to qualified immunity, an officer is entitled to qualified immunity if he had arguable probable cause to arrest a suspect for any crime, even if that crime was not 'the offense announced by the officer at the time of

the arrest.'" *Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023) (internal citations omitted).

Defendant argues that even if he did not have arguable probable cause to arrest Plaintiff for endangering the welfare of a child, he had arguable probable cause to arrest Plaintiff for reckless endangerment under Ala. Code § 13A–6–24, which provided that a person commits the crime of reckless endangerment if he "recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." Ala. Code § 13A–6–24(a).[3] "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Ala. Code § 13A–2–2. The sort of conduct which courts have found to constitute reckless endangerment includes not only extreme conduct such as discharging a firearm in a residential area or occupied dwelling, *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004), but also shining bright lights into a driver's eyes at night, *Bearden v. State*, 255 So. 3d 797, 802 (Ala. Crim. App. 2017), driving recklessly at a high rate of speed, *Hulsey v. State*, 196 So. 3d 342, 357 (Ala. Crim. App. 2015), potentially exposing a child to illegal or unsafe substances such as drugs, *Ex parte P.G.*, 426 So. 3d 858, 863–64 (Ala. Civ. App. 2025), and attempting to run another vehicle off the road, *Glass v. State*, 14 So. 3d 188 (Ala. Crim. App. 2008). The statute "does not require any particular person to be actually placed in danger, but deals with potential risks,

[3] An updated version of § 13A-6-24 went into effect October 1, 2026.

as well as cases where a specific person actually is within the area of danger." Commentary to § 13A-6-24.

Given the plain language of the statute and Alabama case law, the Court finds that Defendant had arguable probable cause to arrest Plaintiff for reckless endangerment. The amended complaint confirms that Defendant was aware that Plaintiff's granddaughter was "riding on top of the car." (Doc. 5, ¶16). Plaintiff admits that his granddaughter was on the roof of the vehicle for "approximately one minute." (Doc. 5, ¶11). A child riding on the roof of a vehicle is an activity that poses a substantial risk of serious physical injury. *See Lighthouse Neurological Rehab. Ctr., Inc. v. Allstate Ins. Co.*, No. 10-10154-BC, 2012 WL 750068, at *11 (E.D. Mich. Mar. 7, 2012) ("Climbing onto a moving vehicle is an inherently dangerous activity that carries a foreseeable risk of injury."). Defendant reasonably inferred that Plaintiff acted with conscious disregard of a substantial and unjustifiable risk by allowing his granddaughter to climb onto his vehicle's roof and then drove with her on the roof. Plaintiff cannot demonstrate that "no reasonable officer could have found probable cause under the totality of the circumstances." *Curry*, 2016 WL 777796, at *4. Thus, Defendant had at least arguable probable cause to arrest Plaintiff pursuant to § 13A–6–24.[4]

**C. Whether Count II plausibly alleges a claim for retaliation under the First Amendment**

[4] Defendant also argues that he had arguable probable cause to arrest Plaintiff for reckless driving under Ala. Code § 32–5A–190. (Doc. 11, PageID.60-62). However, having found that Defendant had arguable probably cause to arrest Plaintiff for endangering the welfare of a child and reckless endangerment, the Court finds it unnecessary to consider whether Plaintiff's actions also could have given rise to arguable probable cause for reckless driving under the language of § 32–5A–190.

"The First Amendment applies to the states through incorporation by the Due process Clause of the Fourteenth Amendment." *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023). The Eleventh Circuit has set forth the requirements for a First Amendment retaliation claim as follows:

> (1) [the plaintiff] engaged in constitutionally protected speech, such as h[is] right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition.

*Huggins v. Sch. Dist. of Manatee Cnty*., 151 F.4th 1268, 1281 (11th Cir. 2025) (alterations in original). Specifically, the defendant official's retaliatory motive must be the but-for cause of the plaintiff's injury. *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019). On a motion to dismiss, "it must be plausible that, had [defendant] not had any ill will toward [plaintiff], the latter would not have been arrested." *Williams*, 65 F.4th at 581. "In § 1983 First Amendment retaliation cases, the Supreme Court has recognized that retaliatory animus by a governmental actor is a subjective condition that is 'easy to allege and hard to disprove.'" *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (quoting *Nieves*, 587 U.S. at 403). For this reason, "when the governmental defendant has utilized the legal system to arrest or prosecute the plaintiff," courts have "require[d] the plaintiff to plead and prove an absence of probable cause as to the challenged retaliatory arrest or prosecution in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury." *Id.* (citing *Nieves*, 587 U.S. at 405-06; *Hartman v. Moore*, 547 U.S. 250, 260-61, 265-66 (2006)).[5]

[5] Following *Nieves*, courts in this Circuit have uniformly held that the existence of arguable probable cause generally forecloses the possibility of a First Amendment claim arising out of an arrest. *Williams*, 65 F.4th at 589 (affirming the dismissal of the plaintiff's complaint where the

While the Supreme Court held in *Nieves*, as a general rule, that a plaintiff bringing a First Amendment retaliatory arrest claim “must plead and prove the absence of probable cause for the arrest,” it also articulated a narrow exception to that rule. *Nieves*, 587 U.S. at 402. The presence of probable cause does not defeat a plaintiff's claim if he produces “objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.” *Id.* at 407. The *Nieves* exception, “account[s] for ‘circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.’” *Gonzalez v. Trevino*, 144 S. Ct. 1663, 1667. "To fall within the exception, a plaintiff must produce evidence to prove that his arrest occurred in such circumstances.” *Id.*

Here, the Court found above that arguable probable cause existed for Plaintiff's arrest. Therefore, he must produce objective evidence to fit within the *Nieves* exception. In his attempt to meet this requirement, Plaintiff presented the following information in his Response to the motion to dismiss:

> Since 2020, Baldwin County, Alabama, has reported approximately 46,005 crimes to the National Incident-Based Reporting System (NIBRS).[1] See Alabama Law Enforcement Agency, Alabama NIBRS, https://crime.alabama.gov/nibrs (last visited May 26, 2026). Of those 46,005, only 37 of those reports arose under Alabama Code §13A-13-6. See id. Of those 37, only 13 reported arrests of the alleged perpetrator. See id. Plaintiff anticipates that upon further investigation, those 13 reported arrests will likely be factually distinct from the facts herein. In contrast, there are approximately 6,000 children in foster care throughout the State of

plaintiff failed to plausibly allege an absence of probable cause for his arrest); *Lambert v. Herrington*, No. CV 1:19-00854-KDB, 2021 WL 566528, at *15 (S.D. Ala. Jan. 22, 2021), *aff'd*, No. 21-10452, 2022 WL 2345769 (11th Cir. June 29, 2022) (noting that “arguable probable cause for an arrest precludes a First Amendment Retaliation claim.”); *Reynolds v. Calhoun*, No. 1:21-CV-649-ECM, 2024 WL 4194312, at *14-15 (M.D. Ala. Sept. 13, 2024) (same); *Foster v. Emberg*, No. 6:22-CV-01275-ACA, 2024 WL 2702661, at *4 (N.D. Ala. May 24, 2024) (same); *Bristol v. Butts Cnty., Georgia*, No. 5:24-CV-00137-TES-CHW, 2024 WL 3558737, at *10 (M.D. Ga. July 24, 2024) (same).

> Alabama, which can only be done upon a finding of dependency. See Alabama Department of Human Resources, Foster Care, https://dhr.alabama.gov/foster-care/ (last visited May 26, 2026); see also H.A.S. v. S.F., 298 So. 3d 1092 (Ala. Civ. App. 2019); F.L. v. K.P., 155 So. 3d 1024 (Ala. Civ. App. 2014); Alabama Code § 12-15-314(a). Proportionally, this places 100-200+ children in foster care in Baldwin County, Alabama.[2]

(Doc. 15, PageID.85-86). The included footnotes state:

> [1] The NIBRS Dashboard contains the following qualification: "In 2020, the FBI's Uniform Crime Reporting Program transitioned from the Summary Reporting System (SRS) to the National Incident-Based Reporting System (NIBRS). During this transition, certain counties and municipalities have had issues submitting this data. As such, this data does not represent a complete picture of crime in the State of Alabama and should not be compared against historic data or on a year-to-year basis until all agencies have made the transition."
>
> [2] It appears Alabama does not release county-by-county statistics on the number of children currently in foster care. However, based on the numbering system juvenile courts use in Baldwin County, Alabama, there are hundreds of juvenile cases filed yearly in Baldwin County, Alabama. Plaintiff can amend his complaint with more accurate figures as the information becomes available.

(Doc. 15, PageID.86). Plaintiff argues that based on "these statistics, it is clear that the vast majority of parents/caregivers with dependent children are not arrested under Alabama Code §13A-13-6." (Doc. 15, PageID.86).

First, this argument fails because objective evidence to support Plaintiff's differential treatment must be alleged in the complaint, and it plainly is not. *See Bristol v. Butts Cnty., Georgia*, No. 5:24-CV-00137-TES-CHW, 2024 WL 3558737, at *10 (M.D. Ga. July 24, 2024) (dismissing First Amendment retaliation claim where objective evidence of differential treatment is not alleged in the complaint). Second, the Court finds that simply amending the complaint to add these allegations would not cure this deficiency. Plaintiff's comparisons are too speculative and attenuated to meet his burden

of producing evidence that similarly situated individuals not engaged in protected speech were treated differently, which is required to pursue a retaliation claim under the narrow *Nieves* exception where probable cause for arrest has been found.

Plaintiff notes that since 2020, Baldwin County made 37 reports to the NIBRS of crimes arising under Alabama Code §13A-13-6, and of those 37, 13 reported arrests of the alleged perpetrator. Based on NIBRS's admittedly incomplete statistics, over 35% of Baldwin County's crime reports based on §13A-13-6 resulted in arrests. A 35% arrest rate for child endangerment reports does not demonstrate a situation "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406.

On the other hand, without knowing the circumstances of these reports, Plaintiff speculates that "upon further investigation" these reported arrests "will likely be factually distinct" from the facts presented here. (Doc. 15, PageID.86). This base speculation is insufficient to support his request to amend to the complaint, and even if it were true, the fact that individuals were arrested under different circumstances would not help Plaintiff meet his burden of demonstrating that he was arrested because of his speech. Plaintiff has presented statistics for the number of individuals arrested for child endangerment since 2020, but he has presented no facts or statistics involving the treatment of individuals known to be driving with children on the outside of their vehicles. While a plaintiff attempting to avail himself of the narrow *Nieves* carve-out need not provide “very specific comparator evidence” — that is, examples of identifiable individuals who acted in the same way as the plaintiff but were not arrested, a plaintiff must produce evidence to show that his arrest occurred in the same circumstances where officers typically exercise

their discretion not to make arrests. *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (finding that a plaintiff could rely on evidence of no arrests under a particular statute in the past ten years for conduct similar to hers, conduct the Court held was not novel). The Court does not find that Plaintiff has met this requirement with the statistics he has presented in his response.

Plaintiff's comparator evidence does not logically apply to the situation presented here. Plaintiff attempts to make a comparison between an inexactly extrapolated number of children in foster care in Baldwin County, who presumably represent parents/caregivers with dependent children, with the low number of individuals arrested under the child endangerment statute. But children go into the foster care system for a wide variety of reasons, many of which are not criminal. Thus, trying to equate a discrepancy between the number of children in foster care and the number of arrests under the child endangerment statute does not establish a comparable circumstance where Baldwin County Sheriff's Officers have probable cause to make arrests but typically exercise their discretion not to do so. Accordingly, the *Nieves* rule, rather than its narrow exception, applies, and probable cause bars Plaintiff's First Amendment retaliation claim.

## VI. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED**. Because Defendant had arguable probable cause to arrest Plaintiff under § 13A–13–6(a)(2) and § 13A–6–24, the undersigned recommends dismissal of **Count I** for wrongful arrest/false arrest **with prejudice**. Recognizing the possibility that another form of objective evidence may exist to support Plaintiff's retaliation claim, the undersigned recommends dismissal of **Count II without prejudice**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the **20th** day of **October, 2026**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**